(Pending *Pro Hac Vice* Admission)
Theodore F. Monroe
Law Offices of Theodore F. Monroe
800 W. Sixth Street, 5th Floor
Los Angeles, California 90017
Phone: (213) 417-3661
Fax: (213) 622-1444
Email: monroe@tfmlaw.com

Grant M. Sumsion (6445)
Daniel L. Steele (6336)
Attorneys for Plaintiffs
SUMSION STEELE & CRANDALL
3400 N Ashton Blvd, Suite 490
Lehi, UT 84043
Telephone: (801) 426-6888
Email:  dan@sumsionsteele.com
          grant@sumsionsteele.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INTELLIGENT PAYMENTS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>REVPROTECT, LLC, a Utah Limited Liability Company; JASON TAYLOR, an individual; JANA TAYLOR, an individual; and Does 1-10, inclusive,<br><br>Defendants. | **COMPLAINT**<br><br><br><br>Case No. 2:15-cv-00410-DBP<br><br>Judge: Dustin B. Pead |

Plaintiff Intelligent Payments, LLC, complains against Defendants RevProtect, LLC,

Jason Taylor, Jana Taylor, and Does 1-10, inclusive, as follows:

1.      Plaintiff Intelligent Payments, LLC ("Plaintiff" or "IPAY") brings this action to recover damages and other relief available at law or in equity against Defendants RevProtect, LLC and its principals, Jason and Jana Taylor (collectively, "Defendants") for their conduct relative to referring fraudulent merchants to IPAY, resulting in millions of dollars in damages.

2.      Specifically, IPAY is in the business of looking for customers in need of credit card processing ("merchants").  Defendants entered into a referral agreement, which required them to refer merchants to IPAY, and in return, Defendants would receive a referral fee. Unbeknownst to IPAY, Defendants were referring unqualified merchants that had actually conspired with Defendants to commit fraud upon IPAY.  The merchants were unqualified in the sense that they were engaging in businesses with an outrageous chargeback ratio, resulting in losses to IPAY.

3.      Defendants woefully failed to perform under the Agreement with IPAY, which required Defendants (a) be truthful and accurate in reporting the merchant's financial history, business nature and inventory to IPAY, (b) refer only legitimate merchants, and (c) comply with the underwriting guidelines of IPAY.

4.      By the time IPAY learned of the Defendants' deceitful conduct and that they were engaged in a large fraud and referring solely high risk merchants, IPAY had been subjected to more than $2 million in losses.  This amount is expected to grow over time.

## PARTIES

5.      Intelligent Payments, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Plano, Texas.

2

6.     RevProtect, LLC is a corporation organized and existing under the laws of the State of Utah with its principal place of business in Utah County, Utah.

7.     Jason Taylor and Jana Taylor are individuals and residents of Utah County, Utah. At all relevant times, Jason and Jana were the principals, owners or managing agents of RevProtect, LLC. Jason and Jana are doing business as RevProtect and RevProtect is an alter ego of Jason and Jana in that there is such a unity of interest between RevProtect and Jason and Jana that they are indistinguishable from one another. Facts in support of this contention include RevProtect is inadequately capitalized and staffed, does not regularly maintain corporate meetings and minutes, comingles funds and does not respect corporate formalities. In addition, RevProtect has an unusually high charge back rate, which further evidences that RevProtect is a sham corporation used to run a fraud against the public.  As such, an inequitable result will occur if Jason and Jana and RevProtect are not treated as one and the same.

8.     Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff at this time.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.   Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants. Each reference in this complaint to "defendants," "Defendant," or a specifically named defendant refers also to all Defendants sued under fictitious names.

9.     Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE took part in and participated with Defendants in all matters referred to herein and was in some manner responsible for the injuries and losses suffered by Plaintiff.

10.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was the agent, servant and/or employee or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, and approved the acts of his agents, employees, and representatives, and that each actively participated in, aided and abetted, or assisted one another in the commission of the wrongdoing alleged in this Complaint.


## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367 because the claims herein are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   Complete diversity exists between IPAY and Defendants and the amount in controversy exceeds $75,000.

12.    This Court possesses personal jurisdiction over Defendants because they reside in and are citizens of Utah County, and Plaintiff has consented to jurisdiction of the Court.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this

judicial district and because Defendants reside in this judicial district for purposes of 28 U.S.C. § 1391 (a) and (c).

## FACTUAL BACKGROUND

14.     On or about March 13, 2013, IPAY and RevProtect entered into a merchant referral agreement (the "Agreement").  A true and correct copy of that Agreement is attached hereto as Exhibit A and incorporated herein by this reference as though set forth in full.

15.     The Agreement recites:  "IPAY is in the business of promoting credit and debit card processing services and related payment software and services for merchants directly or indirectly (the "Services") for and on behalf of HSBC Bank, N.A. (the "Bank"). . . . "Agent is in the business of developing and maintaining revenue-generating client relationships and desires to establish an independent agent relationship whereby it will solicit and refer merchants to IPAY . . . ."

(Agreement at p. 1.)

16.     In soliciting merchants for IPAY, RevProtect specifically acknowledged that it would seek only qualified merchants:

> Agent represents that all information that it submits to IPAY shall be truthful and accurate. In the course of soliciting potential Merchants hereunder, Agent may not create any liability for IPAY or Bank except as may be approved by them in writing in advance and shall not cause IPAY to be in breach of the terms of its agreement with Bank. Agent shall not solicit potential Merchants that (a) are already procuring services from IPAY; or (b) are not acceptable under the underwriting guidelines of IPAY.

(Agreement, ¶ 1.1.)

17.     RevProtect agreed to indemnify IPAY for any and all losses arising from its

merchant referrals:

> Agent shall save, defend, indemnify, reimburse and hold IPAY, Bank and their
> respective affiliates, shareholders, directors, officers, agents and employees
> harmless for all suits, actions, proceedings, losses, claims, liabilities, damages,
> costs and expenses (including all costs and reasonable attorney's fees) actually
> incurred in connection with any consultation, negotiation, or actual action, suit,
> claim, losses or proceeding to which IPAY shall be made a party by reason of:
> (a) the acts or omissions of Agent or any Sub-Agent or any of their respective
> affiliates;
> (b) violation of this agreement, applicable Rule, including, without limitation, any
> and all fines or fees imposed by Visa, MasterCard or any credit card association
> or payment network;
> (c) any fraudulent or dishonest conduct or misrepresentation of Agent or any Sub-
> Agent or any breach by Agent or any Sub-Agent of the terms hereof; or
> (d) taxes with respect to income received hereunder.

(Agreement, ¶ 7.1.)

18.     Furthermore, RevProtect expressly agreed to bear 100% responsibility for all

losses due to Merchant fraud and chargebacks under the Agreement:

> Merchant Losses. One-hundred percent of all losses due to Merchant fraud and
> chargebacks (collectively, "Merchant Losses") incurred by IPAY or Bank will be
> borne by Agent. Notwithstanding the previous sentence, or any other provision
> hereof, Agent will be liable to IPAY for any liability or loss incurred by IPAY or
> Bank arising out of Agent's or any Sub-Agent's breach hereof, negligence, fraud,
> intentional wrongdoing or submission of a Merchant application containing
> information that was in any way false or misleading.

(Agreement, ¶ 7.4.)

19.     The overall spirit of the Agreement dictates that Defendants would only refer

honest and reputable merchants to IPAY and ensure they were not high risk or red-flagged.

20.     Defendants woefully failed to comply with the express terms of the Agreement.

21.     Currently pending in the Northern District of Georgia is the case of *Global

Payments Direct, Inc. v. Intelligent Payments, Inc. et al*, case no. 1:14-CV-02634-LMM.  By that

action, Global Payments Direct, Inc. ("Global") alleges that IPAY owes Global $1.9 million, plus attorneys' fees, for excessive chargebacks incurred by its merchants.

22.     The large number of chargebacks is attributable, in part, to the acts and omissions of Defendants. To the extent, if any, that IPAY is found to be liable to Global, IPAY shall be entitled to full or partial indemnity from Defendants because Defendants are responsible for the chargebacks.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against all Defendants)**

23.     The preceding paragraphs of this Complaint are re-alleged and incorporated herein by this reference.

24.     On or about March 13, 2013, IPAY and RevProtect entered into the merchant referral agreement (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference as though set forth in full.

25.     The Agreement required RevProtect to (a) be truthful and accurate in reporting the merchant's financial history, business nature and inventory to IPAY, (b) refer only legitimate merchants, and (c) comply with the underwriting guidelines of IPAY.

26.     RevProtect breached the Agreement by: (a) conspiring with merchants to submit false and inaccurate financial information; (b) referring non-legitimate merchants; and (c) referring merchants that failed to satisfy IPAY's underwriting guidelines.

27.     IPAY has performed all conditions and obligations required of it to be performed.

28.     As a direct and proximate result of said breaches of the Agreement by RevProtect, IPAY has been damaged, and continues to be damaged, in a sum to be proven at trial but in excess of $2 million.

29.     Individual defendants Jason and Jana Taylor are responsible for the losses under the doctrine of alter ego.

### SECOND CAUSE OF ACTION
### EXPRESS CONTRACTUAL INDEMNITY
**(Against all Defendants)**

30.     The preceding paragraphs of this Complaint are re-alleged and incorporated herein by this reference.

31.     The Agreement requires that RevProtect indemnify and hold harmless IPAY from and against any and all losses arising out of the Agreement.

32.     Specifically, the Agreement provides:

Agent shall save, defend, indemnify, reimburse and hold IPAY, Bank and their respective affiliates, shareholders, directors, officers, agents and employees harmless for all suits, actions, proceedings, losses, claims, liabilities, damages, costs and expenses (including all costs and reasonable attorney's fees) actually incurred in connection with any consultation, negotiation, or actual action, suit, claim, losses or proceeding to which IPAY shall be made a party by reason of:

(a) the acts or omissions of Agent or any Sub-Agent or any of their respective affiliates;

(b) violation of this agreement, applicable Rule, including, without limitation, any and all fines or fees imposed by Visa, MasterCard or any credit card association or payment network;

(c) any fraudulent or dishonest conduct or misrepresentation of Agent or any Sub-Agent or any breach by Agent or any Sub-Agent of the terms hereof; or

(d) taxes with respect to income received hereunder.

(Agreement, ¶ 7.1.)

33.     The Agreement further provides that RevProtect shall be responsible for all losses due to Merchant fraud and chargebacks:

> Merchant Losses. One-hundred percent of all losses due to Merchant fraud and chargebacks (collectively, "Merchant Losses") incurred by IPAY or Bank will be borne by Agent. Notwithstanding the previous sentence, or any other provision hereof, Agent will be liable to IPAY for any liability or loss incurred by IPAY or Bank arising out of Agent's or any Sub-Agent's breach hereof, negligence, fraud, intentional wrongdoing or submission of a Merchant application containing information that was in any way false or misleading.

(Agreement, ¶ 7.4.)

34.     IPAY has suffered claims, damages, fines, demands, fees, assessments and losses in connection with several merchants referred by RevProtect, and as a result of RevProtect's repeated breaches of the Agreement.

35.     By this Complaint, IPAY is making a demand for full indemnity for all claims, damages, fines, demands, fees, assessments and losses it has suffered and will suffer as a direct and proximate result of RevProtect's conduct described above.

36.     The above demand is also being made against Jason and Jana Taylor as alter egos of RevProtect.  Jason and Jana are doing business as RevProtect and RevProtect is an alter ego of Jason and Jana in that there is such a unity of interest between RevProtect and Jason and Jana that they are indistinguishable from one another. Facts in support of this contention include RevProtect is inadequately capitalized and staffed, does not regularly maintain corporate meetings and minutes, comingles funds and does not respect corporate formalities. In addition, RevProtect has an unusually high chargeback rate, which further evidences that RevProtect is a sham corporation used to run a fraud against the public.  As such, an inequitable result would occur if Jason and Jana and RevProtect are not treated as one and the same.

37.     As a direct and proximate result of RevProtect and Jason and Jana's conduct, IPAY has retained the services of Law Offices of Theodore F. Monroe and other lawyers to prosecute this action, thereby incurring costs, consultants' fees, attorneys' fees and other litigation fees in the prosecution of this action and the defense of the demands for payments, fines, and assessments made against IPAY.   IPAY will seek leave of court to amend this Complaint to show the amount of said costs and attorneys' fees when the same becomes known to IPAY.  (Agreement, ¶ 9.8.)

### THIRD CAUSE OF ACTION
### FRAUD
**(Against all Defendants)**

38.     The preceding paragraphs of this Complaint are re-alleged and incorporated herein by this reference.

39.     As more fully set forth above, Defendants (by and through Jason Taylor) engaged in fraud in the performance of the Agreement mentioned above.  The Defendants, acting through Jason, misrepresented and/or conversely concealed material facts, including but not limited to: (a) submitting false and inaccurate financial information on the merchants; (b) referring non-legitimate merchants; and (c) referring merchants that did not meet the underwriting guidelines of IPAY.  The merchants include, but are not limited to, 123 IT Support, Avail SEO, Creative Entity Setup, Diverse Solutions, Guardian Management, Sentry Credit Reporting, RB Consulting, The Office Cart, Top Shelf Marketing, I Learn, and others.

40.     As more fully set forth above, Defendants, acting through Jason, acted intentionally relative to their acts of fraud and deceit and knew their statements and actions (and

conversely concealments) to be false at the time they were made and that same would damage and/or injure Plaintiff. The factual bases include but are not limited to:

      A.     Facts set forth in paragraphs incorporated into this cause of action by reference;

      B.     The conduct in question was part of an established and premeditated scheme devised by Jason Taylor, and was not accidental or coincidental;

      C.     The Defendants specifically and intentionally engaged in acts which they knew would upset and damage IPAY by exposing IPAY to tremendous financial ruin; and

      D.     The Defendants intentionally concealed from IPAY that they were already the target of lawsuits and criminal proceedings regarding their fraudulent and unlawful business practices.

41.     IPAY reasonably relied upon these misrepresentations and/or conversely on the concealment of material facts.  IPAY was reasonable in its reliance at all relevant times and in particular during March 2013 to the present, because Defendants appeared to have been referring revenue-generating merchants. IPAY's reliance ultimately proved extremely detrimental, as more fully set forth above.   The factual bases upon which IPAY bases these allegations include, but are not limited to:

      A.     IPAY believed that it was adequately protected under the indemnity clause of the Agreement;

      B.     IPAY was not aware that Defendants were and/or are targets of criminal prosecution;

C.      IPAY was not aware Defendants were falsifying the merchant data being submitted to IPAY; and

D.      Defendants held themselves out as honorable and trustworthy people and entities, and at that time, IPAY had no reason to doubt them.

42.      IPAY's reliance was detrimental for a variety of reasons.  Had IPAY known the true facts, it would have conducted itself in a much different manner.  For example, IPAY would have required a personal guaranty from the Taylors; IPAY would have considered filing suit and seeking intervention much sooner than IPAY did; IPAY would have prevented the merchants from continuing to process; and other facts according to proof.

43.      As a proximate result of Defendants' conduct, IPAY has suffered substantial damages, in a sum to be proven at trial.  IPAY's damages are continuing and ongoing.

44.      IPAY is also entitled to exemplary and/or punitive damages as a result of acts and omissions by Defendants, which were malicious, fraudulent and/or oppressive in nature.

### FOURTH CAUSE OF ACTION
### CIVIL CONSPIRACY
**(Against all Defendants)**

45.      The preceding paragraphs of this Complaint are re-alleged and incorporated herein by this reference.

46.      From in or around March 2013, Defendants knowingly and willfully conspired and agreed with other persons and entities to defraud IPAY by permitting merchants to apply for and stay in the merchant program with IPAY when, in fact, Defendants knew that the merchants did not qualify as a merchants under both the ISO Agreement and the Merchant Agreement.

47.      Defendants took the following overt acts in furtherance of the conspiracy:

A.    Concealing that the merchants (e.g., 123 IT Support) did not meet the underwriting guidelines of IPAY.

B.    Concealing the true nature of the merchants' businesses, which typically involved the promotion and sale of products and services with unsubstantiated claims or false advertising.

C.    Vouching for the reliability and legitimacy of the merchants, despite knowing full well that the merchants were extremely high-risk merchants.

D.    Falsifying records and information to qualify the merchants.

E.    And various other acts, according to proof.

48.    As a result of the aforesaid wrongful acts and omissions of Defendants, and each of them, IPAY has been injured and damaged in an amount to be proven at trial, but no less than $2 million in losses, fines, penalties, assessments and other losses.

49.    IPAY is also entitled to exemplary and/or punitive damages as a result of acts and omissions by Defendants, which were malicious, fraudulent and/or oppressive in nature.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter an order or judgment against the Defendants as follows:

1.    For an award general and special damages, according to proof;

2.    For an award of punitive damages;

3.    For express indemnity;

4.    For an award attorneys' fees and costs; and

5.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

DATED this 9th day of June, 2014.

Theodore F. Monroe
Law Offices of Theodore F. Monroe
(Pending Admission *Pro Hac Vice*)


SUMSION STEELE & CRANDALL

Grant M. Sumsion


*Attorneys for Plaintiff*

14

# Exhibit A

# INTELLIGENT PAYMENTS LLC
# INDEPENDENT SALES ORGANIZATION (ISO) AGREEMENT

This agreement (the "Agreement") is made and entered into March 13, 2013 by and between Intelligent Payments LLC, a company having its principal place of business at 6860 N. Dallas Parkway, Suite 200   Plano, Texas   75024 ("IPAY"), and RevProtect LLC, a Utah corporation, and located at 6265 W 10220 North, Highland, UT     84003   ("ISO").

WHEREAS IPAY is in the business of promoting credit and debit card processing services and related payment software and services for merchants directly or indirectly (the "Services") for and on behalf of HSBC Bank, N.A. (the "Bank"); and

WHEREAS Agent is in the business of developing and maintaining revenue-generating client relationships and desires to establish an independent agent relationship whereby it will solicit and refer merchants to IPAY for Services pursuant to the terms hereof.

NOW, THEN, THEREFORE, in consideration of the mutual promises and covenants herein contained, IPAY and the Agent hereby agree as follows:

## 1. AGENT OBLIGATIONS.

The following are, without limitation, the principal obligations of the Agent under this Agreement:

1.1     Solicitation. Agent shall solicit applications from merchants that are interested in procuring the Services (each such merchant that subsequently decides to procure the Services as a result of solicitation by Agent hereunder shall be referred to herein as a "Merchant"). Each Merchant shall procure the Services pursuant to a merchant agreement between the Merchant and Bank (together with application material submitted by the Merchant through the Agent, the "Merchant Agreement"). Agent shall set its own schedule and objectives in performing under this Agreement. The Agent shall not be a party to the Merchant Agreement. When required by IPAY, the Agent shall use best efforts to obtain the latest fiscal year business balance sheet and profit and loss statement on each Merchant and personal financial statements on principals of the Merchant and perform an on-site inspection of each potential Merchant location for the purpose of verifying the inventory and verifying the veracity of information provided by the Merchant in its application for Services. Agent represents that all information that it submits to IPAY shall be truthful and accurate. In the course of soliciting potential Merchants hereunder, Agent may not create any liability for IPAY or Bank except as may be approved by them in writing in advance and shall not cause IPAY to be in breach of the terms of its agreement with Bank. Agent shall not solicit potential Merchants that (a) are already procuring services from IPAY; or (b) are not acceptable under the underwriting guidelines of IPAY.

1.2 Merchant Application and Agreement. If a potential Merchant is suitable under IPAY and Bank underwriting guidelines, such as they may be from time to time, Agent will submit an application completed by the Merchant, in a form prescribed by IPAY together with a Merchant Agreement, executed by the prospective Merchant. IPAY shall review the credit profile, product and delivery method to determine whether to accept Merchant, which acceptance shall be determined in IPAY's sole discretion. If IPAY or Bank request additional information from Merchant, Agent shall obtain such information. Agent

acknowledges and agrees that IPAY and Bank each have the right to decline and/or terminate any Merchant accepted for processing by IPAY or Bank.

1.3    Expenses, Tools and Instruments. Agent agrees to invest in its own business in order to perform under this Agreement. Agent shall be solely responsible for any and all expenses incurred while performing hereunder. Agent shall furnish its own office space and any other facilities, tools, equipment, supplies or services, as shall be necessary for the performance of duties of Agent and each Sub-Agent hereunder.

1.4    Disclosure of Additional Relationships. Agent shall disclose to IPAY the existence and nature of any relationships between Agent, or any of its affiliates, and any third parties that are competitors of IPAY. Agent shall not enter into an agreement directly with Bank.

1.5    Bank Standards and Rules. The Services and IPAY are governed by the rules and regulations of the Bank, Visa (available here www.visa.com/rules), MasterCard (available here http://www.mastercard.com/us/wce/PDF/13000_MSP-Entire_Manual.pdf) and other payment card associations or brands as well as other industry or government regulations applicable to the Bank and IPAY (collectively with the rules and procedures of IPAY itself, the "Rules"). Agent shall comply with the Rules.

1.6    Branding Obligations Under Rules. The Rules require Intelligent Payments and Agent and all participants in the merchant account business to comply with certain branding obligations. Consequently, unless the Agent is itself registered with Visa and MasterCard as a sub-ISO of Intelligent Payments, it must (i) submit all marketing material to Intelligent Payments for Intelligent Payments to review for compliance with the Rules and accept prior to use; (ii) use only the name of Intelligent Payments and not its own business name or any other name or identifying mark, as required by the Rules; (iii) provide a business card featuring the Intelligent Payments logo and Bank's name, city and state; (iv) answer and respond to all telecommunications or other correspondence using the name of Intelligent Payments and no other name; (v) use the logos and names of Visa, MasterCard, other bank associations or brands, the Bank and Intelligent Payments only as expressly permitted by Intelligent Payments from time to time, which expressed permission shall not include rights to use Intelligent Payments identity in website and (vi) not make any representation that Intelligent Payments is in the business of leasing equipment.

1.7    Honesty. Agent shall make full and fair disclosure to all potential Merchants of any and all pricing and fees applicable under a Merchant Agreement. Agent shall provide IPAY with information that Agent believes, on reasonable inspection, to be true and complete and accurate. Agent will perform its obligations honestly and in a good workmanship manner, with professional diligence and demeanor. Agent will uphold the good name of Intelligent Payments LLC and HSBC Bank in the marketplace.

1.8    Training. Agent shall provide training to each Merchant and its employees in the Rules applicable to the Services, the operation of any terminal equipment supplied by Agent, IPAY or Bank, including all requirements relating to the security of cardholder and other non-public personal information.   Agent is responsible for ongoing training of employees, agents, or representatives including completion of PCI Awareness training as part of the Intelligent Payments PCI Program.

DocuSign Envelope ID: A575F8BD-561D-46BE-8C3C-3DC3A50EBDDE

1.9     Service. During the Term hereof and so long as Agent is receiving any compensation hereunder, Agent shall provide ongoing support to Merchants and remedy any customer service problems encountered by them. All requests for service by Merchants will receive a timely response from Agent.

1.10    Sub-Agents. Agent shall be wholly liable for all acts and omissions or any and all of its employees, agents or representatives (each a "Sub-Agent"). Agent must have a written agreement with each Sub-Agent which will be substantively identical to this Agreement. Agent shall exclusively bear all liability for compensation of Sub-Agent or any other liabilities arising in relation thereto. Agent guarantees that all of its Sub-Agents shall perform in a manner consistent with the terms hereof. Agent shall be responsible for ensuring compliance of its Sub-Agents with the Rules. Without limitation, Agent shall indemnify and hold IPAY harmless from any and all claims made by any Sub-Agent against IPAY or Bank or claims made by third parties on account of acts or omissions of Sub-Agents. Agent agrees to hold harmless and indemnify IPAY for any and all claims arising out of any injury, disability, or death of any of employees or agents of the Agent.

1.11    Tax. Agent shall be liable for any and all taxes payable on the revenue earned by it hereunder. The total amount of income the Agent receives hereunder, if any, shall be reported on an IRS Form 1099 at the end of each calendar year.

1.12    Adverse Merchant Information. During and following the Term hereof and so long as Agent is receiving any payments hereunder, Agent shall immediately notify IPAY if Agent becomes aware of any adverse information concerning the financial condition of a Merchant or any other potential liabilities relating to Merchants.

1.13    PCI Definition. For purposes of this Agreement, "Data Security Requirements" means the Payment Card Industry Data Security Standard developed by MasterCard and Visa and other similar requirements that apply to entities that transmit, process or store cardholder, transaction card or bank account information, as may be promulgated or amended by a card or electronic payment association or any local, state or federal legislative, judicial or administrative authority from time to time.

1.14    PCI Compliance. As a requirement of the Rules, Agent represents and warrants that it and each of its Sub-Agents and third party service providers is, and during the Term of this Agreement will remain, in compliance in all material respects with all applicable Data Security Requirements, at the expense of Agent. Without liability IPAY and Bank each have the right to withhold Services to Merchants or cease performing hereunder, in whole or in part, and immediately suspend connectivity to the Agent, if Agent, any of its Sub-Agents, is not in compliance in all material respects with all applicable Data Security Requirements until individual or entity is in compliance with all applicable Data Security Requirements. IPAY maintains a PCI program in which Agent participation is a material obligation under this agreement.

Agent shall notify IPAY of any security breach or data compromise of Agent's computer system or the computer system of any of its Merchants. Agent shall not, as a matter of course, store, use or disclose any cardholder or other information concerning Merchants, their customers or transactions through the Services; to the extent that any such information comes into possession of the Agent, it shall be kept under lock and key and in an encrypted format, if it is electronic, and shall be kept only pursuant to specific instructions from IPAY. Agent agrees to comply with all applicable laws and Rules, including,

without limitation, the Visa U.S.A. Cardholder Information Security Program ("CISP"), the Bank Secrecy Act, anti-money laundering laws, OFAC, the USA Patriot Act and other similar laws. Failure to comply with the foregoing Rules and laws may result in fines and/or penalties and Agent agrees to indemnify and reimburse IPAY immediately for any fine or penalty imposed due to IPAY's breach of this section.

## 2.  INTELLIGENT PAYMENTS OBLIGATIONS.

The following are the principal obligations of Intelligent Payments under this Agreement:

2.1   Merchant Applications. IPAY shall provide Agent with applications for Merchants to use in applying for the Services through Agent and IPAY. IPAY shall accept completed Merchant applications subject to the conditions set out above.

2.2   Fees and Residuals. IPAY shall pay fees and residuals ("Fees") to Agent in accordance with Schedule "A" hereto, so long as: (a) Agent is in compliance with the terms hereof; (b) IPAY is receiving its own compensation from Bank in respect of Merchants referred to IPAY hereunder; and (c) such Merchants are continuing to process transactions through the Bank in conformity with their respective Merchant Agreements. IPAY reserves the right to offset from Fees: (i) any amounts owed by Agent or any Sub-Agent to IPAY or Bank; (ii) any revenue paid to Agent but that is uncollected from the Merchant or Bank or that is refunded by the Bank to the Merchant; or (iii) any losses incurred by IPAY due to the wrongful or negligent acts by Agent or any Sub-Agent. IPAY shall pay all Fees due to Agent on or about the 30th day of the month for all Fees which become due and payable during the preceding calendar month. In order for a payment to become due and payable hereunder, Agent's total Fees for the month must equal or exceed $100.00; otherwise balances will be carried over until the minimum is met. If after 180 days the monthly minimum is not met, no amounts will be payable hereunder and this Agreement shall automatically terminate. In the event that Agent disputes any Fee payment received hereunder, Agent agrees to notify IPAY within thirty (30) days of the date of payment. Agent waives any claim against IPAY regarding any payment that it fails to dispute within such thirty (30)-day period. There shall be no Fees payable to Agent in respect of any Merchant that was referred to IPAY or any of its affiliates prior to Agent referring the Merchant to IPAY.

2.3   Reporting to Agent. So long as any Fees are payable to Agent hereunder, IPAY shall provide a report to Agent setting forth the basis upon which the payment is computed.

## 3.  REPRESENTATIONS AND WARRANTIES.

Agent represents, warrants and covenants the following to and for the benefit of IPAY for the Term hereof and so long as Agent is entitled to any Fees hereunder:

3.1   Independently Established Business. Agent is engaged in an independently established business, for the purpose of developing and maintaining revenue-generating client relationships with merchants. If the Agent is an individual engaged in a sole proprietorship, the Agent must have duly filed the required certificate of assumed business name, and may be required to present a copy of the certificate to IPAY. If the Agent is a corporation or otherwise incorporated or formed, it must comply with all corporate filing requirements, and may be required to present a copy of its certificate of incorporation to IPAY.

3.2    Good Standing. If the Agent is an individual, the Agent is above the age of twenty-one (21) and of the age of majority in the State where she or she is domiciled and is fully competent to enter into this Agreement. If the Agent is a corporation or otherwise incorporated or formed, it is validly existing and in good standing under the laws of the State where its principal office is located.

3.3    Full Authority. Agent has full authority and corporate power to enter into this Agreement and to perform its obligations under this Agreement.

3.4    Sale of Information. Agent shall not use, sell, purchase, provide, disclose or exchange credit card, debit card or bank account numbers or Merchant information, or any information collected or received hereunder, to any third party; any and all such information being the sole and exclusive property of IPAY.

3.5    No Violation. Agent's performance of this Agreement will not violate any applicable law or regulation or any agreement to which it is bound as of the date hereof. Without limitation, this Agreement will not cause Agent to be in violation of any of its non-compete or non-solicitation obligations to any third party nor will the Agent perform hereunder so as to be in violation of them.

3.6    Enforceability. This Agreement represents a valid obligation of Agent and is fully enforceable against it.

3.7    Compliance. Agent will comply with the terms of this Agreement, with all applicable Rules, any agreement between IPAY and a Bank as well as all applicable Data Security Requirements.

3.8    No Litigation. Neither Agent, nor its officers and/or directors, are a party to any pending litigation that would have an impact on this Agreement and have never been fined or penalized by Visa, MasterCard or any other association in the credit, payments or banking industry.

3.9    No Crime. Agent has never been convicted of a crime punishable by greater than 15 days of incarceration or of a crime of dishonesty. Prior to the execution of this Agreement, Agent has disclosed to IPAY any and all information that may be relevant to IPAY in its deciding whether or not to enter into this Agreement, such as prior dishonest or illegal activity by Agent.

3.10   No Dishonesty. Agent has never and will not falsify, alter or in any way change information provided by an actual or potential Merchant on an application or otherwise.


4.    NON-SOLICITATION.

4.1    Non-Solicitation. Agent agrees that, during the Term hereof, so long as Agent is receiving Fees hereunder, and for a period of three (3) years thereafter, neither Agent nor any of its sub-agents or affiliates will directly or indirectly engage in the following conduct, or permit or assist any third party to engage in the following conduct, in any capacity including as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity ("Non-solicitation Obligations"):

(a) Merchants. call on, solicit, take away, or attempt to call on, solicit, or take away any of the merchants, customers or Merchants of IPAY or Bank, whether boarded by the Agent or not, on whom Agent called or with whom Agent became acquainted during their association with IPAY, either for itself or for any other person, firm, or corporation; or

(b) Agents. entice, induce or in any manner influence any person or entity who is, or shall be in the direct or indirect service of IPAY to leave the same for the purpose of engaging in a business or being employed by or associated with any other business.

4.2    Breach. Agent agrees and understands that any breach of its Non-solicitation Obligations will cause the forfeiture of all Fees owed by IPAY to Agent as well as grave and irreparable damages to IPAY. The time period referred to in Section 4.1 shall be stayed and extended during any violation or breach of the terms of this section.

4.3    Interpretation. In the event that any court shall finally hold that the time, territory or any other provision of this section constitutes an unreasonable restriction against the Agent, the Agent agrees that the provisions hereof shall not be rendered void but shall apply as to such time, territory and other extent as such court may judicially determine constitutes a reasonable restriction under the circumstances involved. IPAY and Agent each request that any such court make a determination of what would constitute a reasonable restriction under the circumstances involved and to reform this Agreement accordingly. This provision of this section shall survive termination of this Agreement and shall inure to the benefit of IPAY, its successors and assigns.

## 5. CONFIDENTIALITY OBLIGATIONS

5.1    Confidentiality Obligations. Agent agrees that, during the Term hereof, so long as Agent is receiving Fees hereunder and for a period of five (5) years thereafter neither Agent nor any of its affiliates will directly or indirectly engage in the following conduct itself nor permit or assist any third party to breach any of the following obligations (collectively, the "Confidentiality Obligations"):

(a) Confidential Information. For the purposes of this Agreement, "Confidential Information" means all proprietary, secret or confidential information or data relating to IPAY, Bank and any of their respective affiliates, operations, employees, independent sales organizations, agents, products or services, clients, customers or potential customers, merchants or Merchants. Confidential Information shall include, without limitation, Merchant lists, all Merchant Agreements and all parts thereof, Merchant pricing, customer lists, cardholder account numbers, pricing information, Rules (other than publicly available laws and regulations), acquiring bank or processor relationships, Merchant information, leasing information, financial or other data in any format, computer access codes, instruction and/or procedural manuals, payroll information, human resource or personnel information, business strategies and the terms and conditions of this Agreement. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information is: (i) already known to the receiving party free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) or becomes publicly available through no wrongful act of the receiving party; (iv) independently developed by the receiving party without reference to any Confidential Information of the other; or (v) required to be disclosed by law. In order

DocuSign Envelope ID: A575F8BD-561D-46BE-8C3C-3DC3A50EBDDE

for Agent to perform hereunder, IPAY will be obliged to disclose to Agent certain Confidential Information concerning the Services and Merchants.

(b) Non-Disclosure. Agent agrees that he or she will not, except as expressly required in the conduct of its obligations hereunder or as authorized in writing by IPAY, publish or disclose, during Agent's provision of services to IPAY or subsequent thereto, any trade secret or Confidential Information relating to Services (or IPAY's sponsoring banks' or processors' products or services) that Agent may in any way acquire by reason of his or her association with IPAY. Certain Confidential Information, such as, by example only, credit cardholder information must not only be kept strictly confidential, but must also be stored under lock and key and in encrypted format as is more fully spelled out in Visa and MasterCard Rules applicable to the business of IPAY; the Agent shall comply and respect all such Rules. Agent shall not speak to or communicate with any media or journalist or make any public statements concerning this Agreement, the Services, IPAY or Bank without the prior written consent of IPAY.

(c) Legally Required Disclosure. In the event that the Agent is required by law or legal process to disclose any of the trade secret or Confidential Information, the Agent shall provide IPAY with prompt oral and written notice, unless notice is prohibited by law (in which case such notice shall be provided as early as may be legally permissible), of any such requirement so that IPAY may seek a protective order or other appropriate remedy.

(d) No Misappropriation of Trade Secrets/No Unfair Competition. Agent further promises and agrees not to engage in competition with IPAY (or IPAY's sponsoring banks or processors), at any time after the termination of this agreement, while making use of Confidential Information relating to Merchants, IPAY or Bank. Agent acknowledges and agrees that the names and addresses of IPAY's (or IPAY's sponsoring banks' or processors'), Merchants and other customers and all other Confidential Information relating to those Merchants and customers, including but not limited to account numbers, leasing information, financial information and special needs, are provided in confidence and constitute trade secrets of IPAY and that the sale or unauthorized use or disclosure of any of IPAY' trade secrets obtained by Agent during its association with IPAY constitutes unfair competition. Agent promises and agrees not to engage in any unfair competition with IPAY.

(e) Return of Confidential Information. Upon any termination of this Agreement, Agent shall surrender to IPAY all Confidential Information and materials furnished to Agent by IPAY and any materials developed by Agent during the course of the Agreement's term including but not limited to the following: (1) all lists of Merchants and prospective Merchants, (2) forms, office supplies, manuals and any other material previously furnished or made available by IPAY to Agent. In addition, upon any termination hereof, Agent shall cease any and all contact with any Merchant, agent or employee of IPAY and shall no longer promote the Services.

## 6. TERM AND TERMINATION

6.1    Term. The term of this agreement shall be for an initial term of one year commencing on the date signed below (the "Initial Term"). Thereafter, this Agreement shall automatically renew for successive,

DocuSign Envelope ID: A575F8BD-561D-46BE-8C3C-3DC3A50EBDDE

additional one (1) year terms (each a "Renewal Term") unless otherwise terminated. The Initial Term together with each Renewal Term shall be referred to herein as the "Term").

6.2    Termination. Notwithstanding the above, the parties will have the following rights:

(a) Automatic Termination. This Agreement will automatically terminate if: (i) Visa or MasterCard prohibits IPAY from providing, or prohibits Bank from allowing IPAY to provide, the services set forth in this Agreement; (ii) IPAY ceases to be registered as an independent sales organization or member service provider with Visa or MasterCard; (iii) Bank stops providing merchant services; or (iv) Bank is no longer a member of MasterCard or Visa.

(b) Termination Without Cause. Either party may terminate this Agreement at the end of the Initial Term or any Renewal Term upon written notice of termination to the other party at least 90 days prior to the end of the Initial Term or any Renewal Term. IPAY may terminate this Agreement without cause on thirty (30) days prior notice to Agent.

(c) Termination For Cause. Any party may terminate this Agreement upon the occurrence of an Event of Default, as defined below.

6.3    Event of Default. Each of the following occurrences will constitute an "Event of Default" under this Agreement:

(a) Goodwill. Agent engages in any act or omission that may damage the reputation, business, or goodwill of IPAY in which case IPAY may terminate this Agreement on notice to Agent.

(b) False Representation. Any representation or warranty made by Agent or any of its employees, officers, or directors proves to have been false or misleading in any material respect as of the date made, or becomes false or misleading at any time, then IPAY may terminate this Agreement with notice to Agent.

(c) Breach. Either party fails to observe any material obligation specified in this Agreement, and such failure is not cured within 30 days of receipt of written notice thereof from the non-breaching party. Notwithstanding the previous sentence, the fourth such breach by Agent will be deemed an Event of Default by Agent without notice or the opportunity to cure.

6.4    Injunctive Relief. If Agent breaches any of the Non-solicitation Obligations or Confidentiality Obligations of this Agreement, IPAY will suffer irreparable harm and the total amount of monetary damages for any injury to such party will be impossible to calculate and therefore an inadequate remedy. Accordingly, Agent agrees and understands that upon its actual or threatened breach of any of the provisions contained in Section 4.1 or 5.1, IPAY shall be entitled to the immediate grant of injunctive relief without the requirement of posting a bond enjoining such actual or threatened violation by Agent, or any person acting in concert with Agent; and that IPAY may exercise any other rights and seek any other remedies to which IPAY may be entitled to at law, in equity and under this Agreement for any violation of such obligations.

6.5     Post Termination Fees. Obligation to pay fees to the Agent under this Agreement will end thirty (30) days after the termination of this agreement unless: (i) this Agreement is terminated by IPAY due to a breach of the Agreement by Agent; or (ii) Agent is in breach of this Agreement (before or after termination of the Agreement), in which cases IPAY's obligation to pay Fees to the Agent shall terminate.

6.6     Ownership of Merchants. The parties understand and agree that at all times: (i) IPAY has full ownership rights in the Merchant Agreements, (ii) IPAY may have the right to cause the Bank to assign Bank's rights in all or any of the Merchant Agreements to any third party at any time and for any reason, in accordance with the sponsorship agreement between Bank and IPAY, (iii) IPAY may dispose of its right to receive compensation in respect of the Merchants, in which case IPAY would not be under any further obligation to pay Fees to Agent, and (iv) IPAY may, at its discretion, (A) assign its rights and obligations hereunder to a third party or (B) pay Agent a single lump sum payment equivalent to the Agent's pro rata share of the net consideration received by IPAY for its rights in the Merchant Agreements, reasonably calculated by IPAY, without consent of Agent or prior notice to Agent. IPAY also has the right to terminate its sponsorship with Bank and enter into sponsorship with another Bank at any time and without consent of Agent.

## 7.   INDEMNIFICATION AND LIMITATION OF LIABILITY

7.1 Indemnification. Agent shall save, defend, indemnify, reimburse and hold IPAY, Bank and their respective affiliates, shareholders, directors, officers, agents and employees harmless for all suits, actions, proceedings, losses, claims, liabilities, damages, costs and expenses (including all costs and reasonable attorney's fees) actually incurred in connection with any consultation, negotiation, or actual action, suit, claim, losses or proceeding to which IPAY shall be made a party by reason of:

(a)   the acts or omissions of Agent or any Sub-Agent or any of their respective affiliates;
(b)   violation of this agreement, applicable Rule, including, without limitation, any and all fines or fees imposed by Visa, MasterCard or any credit card association or payment network;
(c)   any fraudulent or dishonest conduct or misrepresentation of Agent or any Sub-Agent or any breach by Agent or any Sub-Agent of the terms hereof; or
(d)   taxes with respect to income received hereunder.

7.2     Selection of Counsel. In the event IPAY makes any claim under this provision, IPAY shall have the right (subject to its right of reimbursement hereunder), but not the obligation, to defend the suit with counsel of its choice. Agent agrees to cooperate in such an action. Agent agrees not to settle any claim for which indemnification hereunder may be sought without prior written consent of IPAY. If an attorney is employed by IPAY to enforce the terms of this Agreement, IPAY shall be entitled to recover its reasonable attorney's fees (including reasonable fees for inhouse attorneys) and court costs from Agent.

7.3     Limitation of Liability. Under no circumstances shall IPAY be liable for any indirect, consequential or punitive damages hereunder. Under no circumstances shall the aggregate liability of IPAY to Agent hereunder exceed the aggregate actual amount of Fees actually paid by IPAY to the Agent hereunder in the three (3) months preceding the event giving rise to liability.

7.4     Merchant Losses. One-hundred percent of all losses due to Merchant fraud and chargebacks (collectively, "Merchant Losses") incurred by IPAY or Bank will be borne by Agent. Notwithstanding the previous sentence, or any other provision hereof, Agent will be liable to IPAY for any liability or loss incurred by IPAY or Bank arising out of Agent's or any Sub-Agent's breach hereof, negligence, fraud, intentional wrongdoing or submission of a Merchant application containing information that was in any way false or misleading.

7.5     Security Interest. At any time that Agent is receiving Fees from IPAY, IPAY shall have a security interest in any such commission(s) or incentives owed by IPAY to Agent. Agent agrees that such amount of Fees may be offset, utilized and applied to the payment of any outstanding accounts receivable balance or to satisfy any other of Agent's obligations to IPAY or Bank under this Agreement including, but not limited to, the payment of monetary reimbursement to Merchants or sales representatives, or the legal expenses associated with any claims against IPAY or Bank for which Agent bears responsibility as determined by IPAY in its sole discretion following a thorough investigation of the facts and circumstances.

## 8.   RELATIONSHIP OF THE PARTIES.

8.1     Independent Contractor. It is understood that Agent is an independent contractor, and is not, and shall not be deemed to be, an employee of IPAY for any purpose. Nothing in this Agreement or the parties' relationship shall be construed to give either party the power to direct and control the day-to-day activities of the other. The general conduct of work performed by Agent and its representatives and/or Sub-Agents under this Agreement shall be under Agent's sole control. Agent further understands and agrees that Agent shall be fully responsible for all tax obligations related to the payment of all Fees earned by Agent hereunder. Agent is not entitled to workers compensation insurance, unemployment compensation insurance, pension or profit sharing or other benefits or rights of any kind or nature from or through IPAY or Bank. Nothing in this Agreement or the course of dealing of the parties shall be construed to constitute the parties hereto as partners, joint ventures or as agents or employees of one another or as authorizing either party to obligate the other in any manner. Agent shall not (1) bind IPAY or Bank to any contract or agreement, (2) incur any obligation on behalf of IPAY or Bank, (3) release, assign or transfer any agreement, claim, security or any other asset of IPAY or Bank, (4) borrow or lend any money in the name of IPAY or Bank, or (5) submit to any claim or liability related to the Merchant Agreements, allow judgment to be taken or confessed against IPAY or Bank. Agent, being an Independent Contractor, shall not receive as compensation, or be reimbursed, for any of the following: (i) additional work materials other than provided by the required Rules, (ii) business facilities, telephone, automobile or any other equipment, (iii) any IPAY or Bank employee benefit, (iv) reimbursement for any other cost or expense incurred by Agent in its sales and marketing of the products and services on behalf of IPAY or Bank at IPAY's or Bank's direction.

8.2     Compliance with Third Party and Legal Obligations. Agent understands and acknowledges that all independent sales organizations selling or promoting Visa and MasterCard services must be properly registered with Visa and MasterCard, and that all agents associated with IPAY must therefore comply with the Rules, including all federal, state and local laws that impose requirements on Agent when dealing with merchants pursuant to this Agreement. Agent shall be bound to comply with all Rules. Any

failure by the Agent to comply with the terms of this Section shall constitute a material breach of this Agreement.

8.3     Independent Obligations. The parties' independent obligations to comply with these legal and third-party obligations shall not be construed to give either party the power to direct and control the day-to-day activities of the other.

## 9.  GENERAL PROVISIONS

9.1     Only Agreement. This Agreement supersedes all prior agreements and understandings between the Agent and IPAY and its directors, officers, shareholders, Agents, agents or representatives and constitutes the whole agreement between the Parties hereto. Agent also represents that prior to this Agreement Agent was neither employed by IPAY or any of its affiliates nor has it acted in the role of independent contractor for IPAY or any of its affiliates.

9.2     Force Majeure. Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

9.3     No Other Representations. Except as required by the Rules, this Agreement is the entire Agreement between the parties respecting the subject matter hereof and there are no representations, warranties or commitments other than those expressed herein.

9.4     Amendments and Waivers. No modification, amendment or waiver under this Agreement shall be valid unless in a writing and signed by the Agent and an officer of IPAY.

9.5     Notice. Any notices or other communications required or permitted to be given pursuant to this Agreement shall be sufficient if hand delivered or sent by regular or certified mail, return receipt requested, or by Federal Express or other nationally recognized express delivery service, (postage or other commercial delivery fees prepaid), or by facsimile transmission (provided that transmission is confirmed), to IPAY at its address appearing on the first page hereof and to Agent at the address appearing on the first page hereof or at such other address as a party may designate for such purpose by notice so given to the other party. Hand-delivered notices, notices sent by regular mail and notices sent by facsimile shall be deemed given and received when actually received. All other notices shall be deemed given and received on the date of the first attempted delivery as shown on the certified mail or delivery service receipt.

9.6     Successors and Assigns. Agent may not assign this Agreement without the prior written consent of IPAY and any unauthorized attempted assignment will be null and void. IPAY may assign its rights and obligations hereunder to a third party. If Agent enters into an asset sale, purchase or stock sale or exchange agreement with a third party which would effectuate a sale or merger of Agent's business or rights hereunder without IPAY's written consent, IPAY will have the right to terminate this Agreement immediately. Except as set forth above, this Agreement shall inure to the successors and permitted assigns of the parties hereto.

9.7     Governing Law, Choice of Law and Forum. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas. Any legal actions or proceedings brought to enforce the terms of this Agreement shall be filed in a court of competent jurisdiction within Collin County, Texas.

9.8     Attorney Fees. As a consequence of any action, suit or proceeding brought under this Agreement, the prevailing party shall be entitled to its costs, expenses, and if law permits, its reasonable attorney's fees. In the event that IPAY retains an attorney to enforce compliance with the terms hereof or to collect any amounts owing from Agent hereunder, IPAY may deduct the fees for such attorney from amounts payable to Agent hereunder.

9.9     Counterparts and Electronic Signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement. The counterparts of this Agreement and all Ancillary Documents may be executed and delivered by facsimile or other electronic signature by any of the parties to any other party and the receiving party may rely on the receipt of such document so executed and delivered by facsimile or other electronic means as if the original had been received.

9.10    Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

9.11    Construction Capacity and Counsel. For purposes of construction, this Agreement will be deemed as being drafted by both parties, equally. Agent is executing this Agreement in its/his/her capacity as a business and not as an individual consumer. Agent has had opportunity to seek legal advice prior to the execution hereof.

IN WITNESS WHEREOF, this Agreement is executed by duly authorized officers of the parties and shall be effective as of the date appearing on the first page hereof.

ISO/Agent:     RevProtect LLC                    **Intelligent Payments LLC**

Signed: _Jason Taylor_____          Signed: _Jeff Mains_____
D126E7974AEA492...                                      7E4D61F75699495...

Name: ___Jason Taylor_____           Name: ___Jeff Mains_____

Title: ___Jason Taylor_____           Title: ___CEO_____

Date: _3/13/2013_____             Date: ___3/13/2013_____

# Schedule "A" – Agent Fees / Residual Compensation A

COMMISSION AND RESIDUAL TERMS

The residual percentage paid to AGENT, of all collected discount rates, per transaction fees and other charges, over and above the base interchange discount rates, fees and other charges as described below, except where otherwise noted, shall be based on the schedule below.

### Preferred Market Verticals

Market Type as defined on the merchant application: Healthcare, Technology, Emerging Market, Retail, Restaurant, Lodging, eCommerce, Auto Rental, and Public Sector

| Residual % | Monthly Transaction Volume |
| --- | --- |
| 60% | No minimum volume required |

### Standard Market Verticals

Market Type as defined on the merchant application: MO/TO, Other, and any other market types not defined as "Preferred"

| Residual % | Monthly Transaction Volume |
| --- | --- |
| 55% | No minimum volume required |

Discount Rates, Fees, Dues and Assessments costs for processing are the Interchange Discount Rates, Fees, Dues and Assessments as published by Visa, MasterCard, Discover, American Express, and debit card networks. Other charges are bank fees, gateway and transfer fees, monthly account fees, and other product fees for products selected by the merchant.  These base costs and any other base costs associated with the above revenue paid by Intelligent Payments are updated from time to time. Increases or decreases will be passed through to the AGENT once effective.